## Chester County Trust Co. *v.* Pugh, Appellant.

*Executors and administrators—Decedents' estates—Real estate—Conveyance in fraud of creditors—Right of administrator to maintain bill to set aside fraudulent conveyance.*

The administrator of a decedent who died insolvent, may maintain a bill in equity to set aside a conveyance of real estate made by the decedent during his life time for the purpose of defrauding creditors.

Argued February 12, 1913. Appeal, No. 415, Jan. T., 1912, by defendants, from decree of C. P. Chester County, in equity, No. 564, directing re-conveyance in case of Chester County Trust Company, Administrator, c. t. a. of Thomas B. Brown, deceased, v. Edwin A. and

Clara E. Pugh.    Before FELL, C. J., BROWN, ELKIN, STEWART and MOSCHZISKER, JJ.    Affirmed.

Bill in equity to compel a conveyance by the defendants to the plaintiffs of certain real estate.    Before HEMPHILL, P. J.

The opinion of the Supreme Court states the case.

The court made a decree directing a conveyance of the property in question to the administrator.

*Error assigned,* among others, was the decree of the court.

*J. Frank E. Hause,* for appellants.

*Thomas W. Pierce,* for appellee.

OPINION BY MR. JUSTICE BROWN, May 19, 1913:

Thomas B. Brown was insolvent on April 1, 1911, when he conveyed the property in controversy to Edwin A. Pugh, one of the appellants.    The conveyance was for the purpose of defrauding creditors, and this Pugh knew.    Brown could not have had it set aside, for neither the law nor equity "will extricate a rogue from his own toils."    But he died insolvent, and what he could not have done in his lifetime his administrator has undertaken to do, for the benefit of his creditors, for as to them the conveyance is admittedly void.    What they might have done in Brown's lifetime, or might do now, to bring the property within their grasp is not the question raised on this appeal.    The narrow question for determination is the right of Brown's administrator to institute this proceeding for the benefit of his creditors.

While it is conceded by counsel for appellants that Brown's conveyance is open to attack by his creditors, it is contended that, as he could not have attacked it while he lived, his personal representative stands on no higher ground, and Williams v. Williams, 34 Pa. 312,

and Fowler's Appeal, 87 Pa. 449, are cited in support
of this.    Neither of these cases, however, is to be so
regarded, for the question now before us was not raised
in either.    In the first, land upon which it was alleged
the owner had placed a fraudulent mortgage was sold
under an order of the Orphans' Court, and what this
court decided was that the proper place for the de-
frauded creditors to attack the mortgage was in the
Orphans' Court, on the distribution of the proceeds of
sale, which had taken place before the sci. fa. was tried.
It is true that, in so holding, Mr. Chief Justice THOMP-
SON said the administratrix, as the personal repre-
sentative of the deceased, could not defend against the
mortgage on the ground of fraud, but nothing was said
as to the right of an administrator, when acting as trus-
tee for creditors, to ask that a fraudulent conveyance of
his decedent be set aside.    In the second case—Fowler's
Appeal—creditors had filed a bill to set aside a fraudu-
lent conveyance, and nothing more was decided than
that it was not necessary for the administrator to inter-
vene if the creditors preferred to proceed themselves;
but there was at the same time a clear intimation that
the administrator might have proceeded for the protec-
tion of defrauded creditors, when it was said:  "What-
ever standing the administrator might have to impeach
this deed would be derived solely from his position as
trustee for the creditors defrauded."

An administrator serves in a dual capacity.    While
he is the personal representative of the deceased, he acts
at the same time as trustee for the latter's creditors,
"and in that capacity he is bound to protect their inter-
est": Buehler v. Gloninger, 2 Watts 226.    In this re-
spect he is unlike an assignee for the benefit of creditors,
who stands in the shoes of the assignor, and, for the pur-
pose of paying creditors, converts for him what passes
by the deed of assignment.    His rights rise no higher
than those of his assignor, and, being but a volunteer, he
has no right to impeach the validity of a gift or trans-

fer by the assignor on the ground of want of considera-
tion and its consequent fraudulent character as against
existing creditors.   While an administrator, as the mere.
personal representative of a decedent, can take no steps
to set aside a fraudulent act for the benefit of heirs, next
of kin, legatees or devisees, his right to do so for the
benefit of creditors, for whom he is trustee, has long
been recognized in this State.   In Stewart v. Kearney, 6
Watts 453, Kearney had made a fraudulent transfer of
certain personal property, and brought suit to recover
the value of it after it had been sold by his transferee.
He died during the pendency of the suit, and his admin-
istrator was substituted as plaintiff.   In holding that
the decedent could not have recovered, but that his ad-
ministrator could maintain the action, Mr. Chief Justice
GIBSON said: "For the benefit of the fraudulent vendor,
or those who stand in his place, by testament or descent,
no action lies; but against the interests attempted to be
defrauded, the sale is a nullity, and this action is main-
tainable in the name of the administrator, as a trustee
for the creditors, according to Buehler v. Gloninger, 2
Watts 226, only so far as the property in contest may be
needed for payment of debts, whose existence the plain-
tiff would be bound to show."   If an administrator may
sue for the benefit of creditors for the recovery of the
value of goods fraudulently transferred by his decedent,
why should he not have the same right as to fraudu-
lently conveyed real estate?   Land is as much an asset
for the payment of the debts of a decedent as is his per-
sonal property, and the right of an administrator to re-
cover either is the same when he acts in his capacity as
trustee for creditors.   This was distinctly recognized in
Bouslough v. Bouslough, 68 Pa. 495, where, in referring
to the fraudulent conveyance by a decedent, Mr. Justice
AGNEW said: "Indeed, he cannot avoid his own convey-
ance or gift even though fraudulent as to creditors.   The
same rule follows the estate into the hands of his execu-
tor or administrator, who cannot set aside the fraudu-

lent act for the benefit of his heirs or next of kin. But when the interest in the subject changes, a different rule prevails. Therefore the executor or administrator may set up the fraud, and avoid the act of the decedent for the benefit of creditors where the estate is insolvent: Buehler v. Gloninger, 2 Watts 226; Stewart v. Kearney, 6 Watts 453." Another case to which reference may be made is Skile's Appeal, 110 Pa. 248, where, on a bill filed by the administrator of an insolvent decedent, a decree was made ordering a reconveyance to the administrator of the property found to have been conveyed by the decedent in fraud of creditors.

The general rule as to the right of the appellee to file this bill is thus laid down in Schouler, Ex'rs, 220: "Any gift, assignment, conveyance, or transfer of property within the statute 13 Eliz. c. 5, and analogous legislation, is void against creditors, and consequently it becomes the duty of a personal representative to procure the property by instituting, on their behalf, appropriate proceedings, considering the means of litigation at his disposal, and the proof obtainable.......Generally speaking, property which has been assigned or conveyed by the deceased, after the manner of a gift, confers a title upon the donee or grantee, subject to the demands of prior existing creditors of the estate. The executor or administrator, representing these and other interests, against the express or implied wishes of the deceased himself, if need be, may procure all assets suitable for discharging demands of this character.......The personal representative's right and duty to have a fraudulent transfer set aside may extend to proceedings by bill in equity to reach real estate thus fraudulently conveyed, so far, at least, as the interests of creditors may require real property to be reached for the satisfaction of debts." In some jurisdictions this rule is followed; in others it is not. But it is to be regarded as obtaining with us, and the decree is, therefore, affirmed at appellants' costs.