### Rudzinski et ux. v. D'Orazio et vir

*Thomas F. Doran*, for plaintiffs.
*Smillie, Bean & Scirica*, for defendants.

KNIGHT, P. J., January 16, 1952.—The facts have been stated in our previous opinion filed upon exceptions to the master's original report and will not be restated here.

Defendants contend that no rent is due by them to plaintiffs because under the Act of June 24, 1895, P. L. 237, they were not in exclusive possession of the premises which were the subject of the partition proceeding. This provides:

"In all cases in which any real estate is now or shall be hereafter held by two or more persons as tenants in common, and one or more of said tenants shall have been or shall hereafter be in possession of said real estate, it shall be lawful for any one or more of said tenants in common, not in possession, to sue for and recover from such tenants in possession his or their proportionate part of the rental value of said real estate for the time such real estate shall have been in possession as aforesaid . . ."

The master, in charging defendants with a portion of the rental value of the premises, relied on two cases. In Huffman's Estate (No. 1), 349 Pa. 18 (1944), one tenant in common was charged with the rental value of the premises and nothing was said about his having excluded the others. Said the court: "We cannot infer from these facts a family arrangement whereby there was to be no charge for use and occupation." The Supreme Court decided that it would not disturb the auditor's determination of a charge for use and occupancy against the tenant in possession. This case arose under the Orphans' Court Partition Act of June 7, 1917, P. L. 337, but Mr. Justice Hughes points out that the Orphans' Court Partition Act is simply a reënactment of the pertinent part of the Act of 1895, supra, and he footnotes each of the two acts.

In Search Estate, 160 Pa. Superior Ct. 488 (1947), which also arose under the Orphans' Court Partition Act, supra, one tenant in common in possession was charged with rent. He argued that he did not have to pay rent as he did not deny the same right of occupancy to the other tenants in common. (The theory of the earlier cases and the contention of the herein defendants.) In the opinion, page 491, we find this language:

"In this case the evidence sustains the auditing judge's finding of fact that appellant 'had exclusive possession of the premises'. The appellant testified that he paid the taxes on the property, made repairs to the building for his own accommodation and that since the death of his mother he had been 'in exclusive possession of this property—no one else'. The circumstances that none of the other tenants tried 'to move in' or objected to appellant's 'occupation of the place' are not material, under the authority of the Huffman case, supra."

Defendants rely in support of their contention upon certain cases construing the Act of 1895, supra. In Hoog et al. v. Diehl, 134 Pa. Superior Ct. 14 (1938), the Superior Court declares as requisites to the recovery of rent from a tenant in common in possession that the possession must be exclusive and that the other tenant or tenants were excluded.

The court did not define exclusive possession and based its decision on the pleadings because there was no averment in the bill as to who was in possession of the premises and no prayer for relief as to rental charges and the decree appointing the master did not authorize rental adjustment.

In the present case, the averment of exclusive possession is made in the amended bill.

The strongest case cited by defendants is Citizens Deposit & Trust Company of Sharpsburg v. Citizens

Deposit & Trust Company of Sharpsburg et al., 136 Pa. Superior Ct. 413 (1939). At page 420 of the opinion it is said:

"There is not the slightest evidence to show an exclusion of the father from the premises."

If this language is compared with that of the quotation from Search Estate, supra, this and other earlier cases must be considered as having been superseded by the Huffman and Search cases.

Defendants argue that the Huffman and Search cases, supra, were decided under the Orphans' Court Partition Act while the cases they cite were decided under the Act of 1895 and that therefore the Huffman and Search cases have no bearing on this partition brought in the common pleas. The orphans' court and the common pleas, although separate and distinct courts, have coördinate jurisdiction in the matter of partition among tenants in common and the fact that the legislature passed almost identical acts shows an intention that the language should be interpreted alike in both courts. It would be strange to hold that our appellate courts would interpret the same language on identical subject matter differently depending on the court the proceedings of which it was reviewing.

In both courts the proceedings are of an equitable nature and it seems just and equitable that those who have the benefit of use and occupation should pay for it.

The cases cited by defendants do not define what is meant by exclusive possession and what conduct is sufficient to show that the tenants out of possession were excluded. The earlier cases seem to hold that there was nothing in the conduct of the parties which would warrant a finding that the herein plaintiffs were excluded from possession, the later cases take what to us is a more sensible view, namely, that there

is nothing in the conduct of the parties that would warrant a finding that there was an agreement that defendants could occupy the premises without paying rent.

Certainly the courts never intended to hold that the tenant in possession must physically eject the other tenants before he can be charged with rent. We think it more equitable to hold that exclusive possession means that one tenant alone occupied the property and exercised the rights of an owner such as making repairs and changes to suit his convenience without consulting the others. Here we are dealing with an Italian family of four children. One daughter was married and never occupied the common home after the death of her father; later plaintiff married and established a home of his own, leaving defendants in exclusive possession of the home with the exception of the son, Stanley, who lived with them and paid board.

We are of the opinion that the master properly charged defendants for the use and occupation of the premises.

Defendants contend, however, that even assuming that defendants are to be charged for use and occupation of the premises during the times set forth by the master, nevertheless the master erred in the proportions of the rent with which he charged defendants.

The master found that the rental value of the premises was $28 per month and no exception is taken to this finding.

From the date of the father's death to February 3, 1946, all the children lived in the common home except Jennie, and Jennie is making no claim for rent during that period. Defendant, Mary, owes no rent to Frank, plaintiff, to February 3, 1946. Frank, plaintiff, moved out of the house leaving Stanley and defendant, Mary, and her husband in possession. Since there is no evi-

dence to the contrary, we must treat Stanley and Mary as tenants in common in exclusive possession; therefore they owed Frank and Jennie $14. Mary then owed Frank $7 per month. This arrangement continued until August 11, 1947, or 18 months and seven days, a total of $127.63.

On August 11, 1947, Frank purchased the shares of Jennie and Stanley so that he became the owner of three fourths of the fee. Stanley remained in the property, apparently as a tenant at will of Mary and Frank. It is not clear from the testimony whether Stanley was a tenant or merely a boarder, and in the absence of evidence to the contrary we must treat him as a tenant as did the master.

The rental value of the property was $28 per month but it does not follow that Stanley's rent as a tenant at will is to be fixed by his one-fourth interest in the property. In the absence of any evidence as to the amount to be paid by Stanley as a tenant at will, we must conclude that he should pay one half of the rent. Therefore, Stanley owes Mary and Frank $14 per month and of this $14, Frank's share would be $10.50 and Mary's share $3.50. Mary would owe $14 of the rent, of which she is entitled to a credit of $3.50, representing her one-fourth interest in the property. Therefore as we figure it, Mary owes Frank $10.50 per month from August 11, 1947, to March 22, 1951, when the property was conveyed by a master, a period of 43 months and 11 days or a total of $454.

The master allowed the following credits: Thomas F. Doran, fee as attorney for plaintiff, $175; Stanley B. Cooper, master's fee, $225.

So far as the master's fee is concerned, the exception is dismissed. The fee does not compensate the master for the amount of work he has done. We have no doubt that Mr. Doran has earned the fee credited, but most of his work was for his client and not for

the benefit of the fund. There was no contest so far as the creation of the fund was concerned. Under all the circumstances, we think the fee to Mr. Doran to be paid out of the fund should not exceed $75. His client should pay him any additional fee he may be entitled to.

Defendants claimed credit for certain moneys expended by them in maintaining the property and some of these credits were not allowed by the master. His failure to allow all of the credits asked for was the subject of exception by defendants. We find no merit in this exception.

Defendants paid the water rent in the house during the time they were in possession and the master did not allow this claim as a credit. Exception was taken by defendants but we likewise find no merit in this exception.

And now, January 16, 1952, the first, second, fifth and sixth exceptions are sustained to the extent set forth in this opinion and the schedule of distribution made a part of this opinion.